FILED

APR 09 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re: ) BAP No.   NV-12-1228-KiDJu
)
BOBBY JOE WALLACE and BRIDGET ) Bk. No.   10-24125
JANINE WALLACE, )
)
              Debtors. )
)
_____ )
)
ABEL ROSALES; ROBERT PIKE; )
GARY AARDEMA; AARDEMA & )
LONDON, )
)
              Appellants, )
) **O P I N I O N**
v. )
)
BOBBY JOE WALLACE; BRIDGET )
JANINE WALLACE, )
)
)
              Appellees. )
_____ )

Argued and Submitted on January 25, 2013,
at Las Vegas, Nevada

Filed – April 9, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

_____

APPEARANCES:     David Mincin, Esq. argued for Appellants Abel
Rosales, Robert Pike, Gary Aardema and Aardema &
London; Christopher P. Burke, Esq. argued for
Appellees Bobby Joe Wallace and Bridget Janine
Wallace.


Before: KIRSCHER, DUNN and JURY, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

This is the second appeal stemming from a bankruptcy court order finding appellants Abel Rosales ("Rosales"), Robert Pike ("Pike"), Gary Aardema, Esq. ("Aardema") and Aardema & London (collectively "Appellants") in contempt for violating the discharge injunction and awarding debtors Bobby J. Wallace ("Wallace") and Bridget J. Wallace (collectively "Debtors") monetary sanctions in the amount of $4,660.00 ("First Contempt Order"). In the first appeal, the Panel affirmed in part and vacated and remanded in part.

Appellants now appeal the bankruptcy court's subsequent order finding them in contempt for failing to comply with the First Contempt Order, compelling them to pay the ordered sanctions award and sanctioning them an additional $1,250.00 for their contempt ("Second Contempt Order"). This Second Contempt Order was issued prior to the Panel's decision on the First Contempt Order.

We hold that a sanctions award for misconduct is unlike a money judgment, and the bankruptcy court may use its contempt powers to enforce compliance with a previously issued sanctions order when the sanctioned party fails to comply with that prior order. We AFFIRM.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**A.    The first appeal (NV-11-1681)**

A more detailed background of this case can be found in the Panel's Memorandum entered in the parties' first appeal on June 26, 2012. Prior to Debtors' bankruptcy, Rosales and Pike had each entered into a contract with Wallace, a California licensed

-2-

contractor, to drill and install wells at their respective properties in California. Rosales and Pike claimed they were damaged by Wallace's negligence in installing the wells. Aardema represented Rosales and Pike in their claims against Wallace in California. Claims filed against Wallace's surety bond were denied. Appellants were preparing civil litigation against Wallace, his business and the bond company when they received notice of Debtors' bankruptcy filed in Nevada.

Debtors filed a chapter 7[1] bankruptcy case on July 29, 2010. They listed Appellants as unsecured creditors in their Schedule F. Debtors received their discharge on November 2, 2010. Appellants did not dispute receiving notice of Debtors' discharge.

Although the automatic stay had already been dissolved due to Debtors' discharge under § 362(c)(2)(C), on November 3, 2010, Rosales and Pike moved for relief from stay to pursue a state court action in California against Wallace in hopes of recovering damages from Wallace's commercial general liability insurance policy ("CGL policy") and/or surety bond. Debtors did not oppose the motion. The bankruptcy court granted the stay relief motion on January 4, 2011. The stay relief order specifically directed that any recovery against Wallace be limited to the extent of proceeds from the CGL policy and/or surety bond.

Appellants filed the state court action against Wallace and other defendants in April 2011 ("Complaint"). Despite the bankruptcy court's conditional order, the Complaint did not refer

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-3-

to the CGL policy or the insurer, and the prayer for relief sought general, special and punitive damages against all defendants, including Wallace individually.

In September 2011, Debtors moved to reopen their chapter 7 case and to find Appellants in contempt for violating the discharge injunction as allowed under § 105 ("First Contempt Motion"). Appellants opposed the motion, contending the Complaint complied with the stay relief order and that it was never their intent to pursue Wallace individually. At the hearing in November 2011, the bankruptcy court acknowledged that Wallace had to be named in the Complaint to trigger coverage by his insurer. However, the Complaint sought damages from Wallace individually and failed to specify that Rosales and Pike were seeking damages against the insurance policy only, as required by the stay relief order and Ninth Circuit law. Accordingly, the bankruptcy court found that Appellants had violated the discharge injunction. It rejected Appellants' contentions that the Complaint complied with the stay relief order and was not an act to collect on a discharged debt. The court further rejected as a "lame excuse" Appellants' argument that the Complaint, which was prepared before the bankruptcy, was "boilerplate" and inadvertently filed, particularly since the Complaint had still not been amended some seven months later.

The bankruptcy court granted the First Contempt Motion, finding Appellants in contempt of the discharge injunction and imposing sanctions of $260.00 for the reopening fee, $1,400.00 for Debtors' attorney's fees incurred in bringing the motion, and $3,000.00 for punitive damages, for a total of $4,660.00. The

-4-

First Contempt Order was entered on November 17, 2011. Appellants timely appealed. They did not post a bond or seek a stay of the First Contempt Order pending appeal.

On appeal, the Panel agreed the Complaint failed to specify that recovery would be limited only to Wallace's insurance proceeds, and that the prayer for punitive damages showed an intent to sue Wallace personally, as such damages would not likely be recoverable under his CGL policy or surety bond. Accordingly, the Panel concluded that the bankruptcy court did not err in determining that Appellants' conduct was willful and a continuing violation of the discharge injunction and that sanctions were warranted. The Panel affirmed the bankruptcy court's award of $260.00 for the reopening fee and $1,400.00 for the attorney's fees, but vacated and remanded the $3,000.00 punitive damages award because the court did not articulate sufficient findings under Rule 7052 to support it.

**B. The current appeal**

According to the First Contempt Order entered on November 17, 2011, Appellants were to pay all monetary sanctions within 60 days of entry of the order - i.e., by no later than January 16, 2012:

> IT IS HEREBY ORDERED that Wallace's Motion to Reopen Chapter 7 Under U.S.C. § 350 and F.R.B.P. 5010 to Hold Creditors in Contempt and an Order [Judgment] Sanctioning the Creditors for Violation of the Discharge Injunction 11 U.S.C. § 524(a)(2) is granted,
>
> IT IS HEREBY FURTHER ORDERED that Rosales, Pike, Aardema individually, and Aardema & London violated the discharge injunction;
>
> IT IS HEREBY FURTHER ORDERED that Rosales, Pike, Aardema individually, and Aardema & London are sanctioned as set out below, with the parties having joint and several liability;

-5-

IT IS HEREBY FURHTER [sic] ORDERD [sic] that Rosales, Pike, Aardema individually, and Aardema & London are to reimburse Wallace the fee to reopen this case of $260.00;

IT IS HEREBY FURTHER ORDERED that Debtors attorney, Christopher P. Burke, is awarded attorney fees of $1,400.00;

IT IS HEREBY FURTHER ORDERED that punitive damages are awarded in the amount of $3,000.00;

IT IS HEREBY FURTHER ORDERED all monetary sanctions are to be paid within sixty (60) days of this Order [Judgment] being signed[.]

Footnote 1 in the First Contempt Order states:

Under the Federal Rules of Bankruptcy Procedure an Order is the equivalent of a judgment. See Fed. R. Bankr. P. 9001(7) and 9002(5).

After January 16 passed without any payment from Appellants, Debtors moved under § 105 to hold Appellants in contempt, to compel payment and to be awarded additional sanctions and attorney's fees for Appellants' failure to comply with the First Contempt Order ("Second Contempt Motion"). Debtors requested additional sanctions of $500.00, plus $750.00 for attorney's fees incurred in filing the motion.

Appellants opposed the Second Contempt Motion, contending that because of the First Contempt Order's language in footnote 1 and other references to it as an "Order [Judgment]," it was actually a money judgment, and the appropriate remedy to enforce a money judgment under Civil Rule 69(a) was a writ of execution, not a motion for contempt. Therefore, argued Appellants, Debtors' Second Contempt Motion was not the proper procedure for enforcing payment.

The bankruptcy court held a hearing on the Second Contempt Motion on February 29, 2012. Counsel for Appellants announced

that his clients were willing to pay the sanctions awarded in the First Contempt Order to settle the matter, and that his firm had a check payable to Debtors' attorney in the full amount to deposit with the court registry. Counsel then argued that his clients were not ignoring the First Contempt Order, but they opposed the Second Contempt Motion because they believed the First Contempt Order was a money judgment, and therefore Debtors' remedy was to execute on the judgment, not bring contempt proceedings. Debtors' counsel noted that Appellants did not offer a check until after the 60 days had run and Debtors had filed the Second Contempt Motion. The bankruptcy court took the matter under advisement and continued the hearing until April 11, 2012.

The continued hearing went forward on April 11. After hearing further argument from the parties, the bankruptcy court granted the Second Contempt Motion:

> All right. Well, I'm going to grant [Debtors'] motion. While it's true the order may be ambiguous in suggesting it's a judgment, the point was this was my order because the attorney parties didn't abide by a court order that is by the code provisions.
>
> They have exacerbated that by failing to obey my order to pay, so they are in contempt, and they must pay the money over.
> . . . .
>
> The original money be paid by tomorrow. $500 a day for every day it's not paid. I'm also going to allow additional sanctions of $500 for having to bring the motion and attorneys fees of $750.
> . . . .
>
> So the order is that they must pay. That they are in contempt. The order was a contempt order which is enforceable by this Court. It's not merely a judgment which is enforceable by execution.
>
> It must be paid by . . . Monday by noon. For every day thereafter, $500 a day plus $500 sanctions and $750 in attorneys fees to be paid by -- **those moneys be paid by**

-7-

**April 20th** (emphasis added). Hr'g Tr. (Apr. 11, 2012) 5:6-13, 21-24; 6:4-12. Immediately after the hearing, counsel for Appellants paid the $4,660.00 awarded in the First Contempt Order in full.

The bankruptcy court entered the Second Contempt Order on April 18, 2012. The Court found Appellants in contempt, ordered them to pay the original sanctions award of $4,660.00 by April 16, 2012, sanctioned them an additional $500.00 for every day the $4,660.00 was not timely paid, and sanctioned them an additional $1,250.00 to be paid by April 20, 2012 - $500.00 for their contempt in not paying the original sanctions award within 60 days as ordered, and $750.00 in attorney's fees for Debtors' need to file the Second Contempt Motion. Appellants timely appealed.

Although not having paid the additional $1,250.00 sanction as ordered by April 20, 2012, Appellants moved for stay pending appeal of the Second Contempt Order on April 23, 2012. Appellants contended that when Debtors' counsel circulated the proposed order, they argued that the court had not given a specific date for payment of the additional $1,250.00 sanction at the April 11 hearing. Appellants asked to be given until May 11, 2012, to pay the additional $1,250.00.

Debtors opposed Appellants' motion for stay pending appeal, contending it was devoid of any legal or factual basis. Attached to their opposition was a portion of the April 11 transcript showing that the bankruptcy court had ordered the additional

-8-

$1,250.00 sanction be paid by April 20.[2]

The bankruptcy court denied the stay motion, notwithstanding Appellants' non-appearance at the April 30, 2012 hearing. The related order was entered on May 11, 2012. The Panel entered an order on June 6, 2012, granting Appellants' emergency motion for stay pending appeal on the condition that Appellants' cash supersedeas bond of $1,250.00 be deposited with the bankruptcy court.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). Where the contempt proceeding is the sole proceeding before the court, an order of civil contempt finding a party in contempt of a prior final judgment and imposing sanctions is a final appealable order. Shuffler v. Heritage Bank, 720 F.2d 1141, 1145 (9th Cir. 1983). Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion in granting the Second Contempt Motion and holding the Appellants in contempt for failing to comply with the original sanctions award?

---

[2] After April 20 passed without any payment from Appellants, Debtors moved to hold Appellants in contempt of the Second Contempt Order, to compel payment and requested an additional sanction of $25,000.00 and $1,000.00 for attorney's fees ("Third Contempt Motion"). A hearing was set for June 6, 2012.
Appellants opposed the Third Contempt Motion. They contended that despite their objections to the circulated proposed Second Contempt Order setting a deadline of April 20 for payment of the additional $1,250.00 sanction and Debtors' refusal to give them a reasonable time to pay, Debtors "unilaterally" set April 20 as the due date. In reviewing the bankruptcy court docket, no activity has occurred on the Third Contempt Motion since it was filed.

# IV. STANDARDS OF REVIEW

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion.  Nash v. Clark County Dist. Attorney's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012)(citing Missoula Fed. Credit Union v. Reinertson (In re Reinertson), 241 B.R. 451, 454 (9th Cir. BAP 1999)); see also Hilao v. Estate of Marcos, 103 F.3d 762, 764 (9th Cir. 1996)(order granting or denying a motion for civil contempt is reviewed for abuse of discretion).  Likewise, we review a bankruptcy court's interpretation of its own order for an abuse of discretion.  Arenson v. Chi. Mercantile Exch., 520 F.2d 722, 725 (7th Cir. 1975).  A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record.  TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

# V. DISCUSSION

## A.    Contempt under § 105

Contempt proceedings are governed by Rule 9020, which states that Rule 9014 governs a motion for an order of contempt.  The bankruptcy court has the authority to impose civil contempt sanctions under § 105(a).[3]  Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1189-90 (9th Cir. 2003); Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002); Walls v. Wells Fargo Bank, 276 F.3d 502, 507 (9th Cir. 2002); In re Nash, 464

---

[3]  Section 105(a) provides in relevant part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

-10-

B.R. at 880.

To find a party in civil contempt, the court must find that the offending party knowingly violated a definite and specific court order, and the moving party has the burden of showing the violation by clear and convincing evidence. In re Dyer, 322 F.3d at 1190-91. The burden then shifts to the contemnors to demonstrate why they were unable to comply. FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order. Shuffler, 720 F.2d at 1146-47 (internal quotations and citations omitted).

**B. Analysis**

**1. The First Contempt Order was not a money judgment.**

Appellants first contend that because the language in the First Contempt Order was in direct conflict, no "definite and specific court order" existed as a basis for civil contempt when not obeyed. Specifically, Appellants argue that while footnote 1 indicates that the First Contempt Order is a judgment, other language states that the amounts awarded are to be paid in 60 days. Further, specific language in the order awards Debtors certain sums of money for punitive damages and attorney's fees and costs, which Appellants argue leads one to conclude that the First Contempt Order is a money judgment. Therefore, contend Appellants, they were not clear whether the First Contempt Order was a money judgment (which they assert must be enforced through a writ of execution) or simply a sanctions order to be paid within a set period of time.

-11-

Although the bankruptcy court acknowledged in its oral ruling that the First Contempt Order may be ambiguous by suggesting it was a judgment, the court noted that the point of the order was to sanction Appellants for willfully violating the discharge injunction under § 524(a)(2). Upon further consideration of Appellants' ambiguity argument, the bankruptcy court then specifically found that the order was a contempt order enforceable by the court and not merely a judgment enforceable by execution.

We accord substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion. <u>Marciano v. Fahs (In re Marciano)</u>, 459 B.R. 27, 35 (9th Cir. BAP 2011). <u>See</u> <u>Hallett v. Morgan</u>, 296 F.3d 732, 739-40 (9th Cir. 2002)(special consideration is given to the trial court's interpretation of its own orders); <u>Colonial Auto Ctr. v. Tomlin (In re Tomlin)</u>, 105 F.3d 933, 941 (4th Cir. 1997)(the bankruptcy judge who has presided over a case from its inception is in the best position to clarify the court's rulings).

We are not convinced that the bankruptcy court's interpretation of the First Contempt Order was an abuse of discretion. Despite footnote 1 implying that it was a judgment by referring to Rules 9001(7) and 9002(5), these Rules merely provide definitions for the word "Judgment" as "any appealable order" and "any order appealable to an appellate court." We fail to see how these definitions would transform what is clearly an order to pay monetary sanctions within a specified time period into a money judgment.

If Appellants were truly concerned with whether the First

-12-

Contempt Order was an order to pay or a money judgment, they could have sought clarification from the bankruptcy court before the 60 days expired. Their conduct certainly does not meet the standard under Shuffler to take all reasonable steps within one's power to insure compliance with the court's order. We also see no evidence in the record that Appellants ever objected to the form of the First Contempt Order, either before or after it was entered. Appellants' contentions here appear to be nothing more than a delay tactic to avoid paying a sanction they believe was wrongly imposed in the first place.[4]

**2.    The contempt proceeding was proper.**

Appellants also argue that because the First Contempt Order was a money judgment, Debtors' remedy for enforcement of payment was through a writ of execution, not through contempt proceedings. We have already concluded that the First Contempt Order was not a money judgment. However, even if it were, we reject Appellants' argument.

Appellants are correct in that, generally, the proper means to secure compliance with a money judgment is to seek a writ of execution. Hilao v. Estate of Marcos, 95 F.3d 848, 854 (9th Cir. 1996); Shuffler, 720 F.2d at 1147; Aetna Cas. & Sur. Co. v.

---

[4] Appellants imply that the First Contempt Order must be a money judgment because orders to pay a sum of money are enforceable as a money judgment under Nevada law. See Nev. Rev. Stat. 15.040 ("Enforcement of order for payment of money. Whenever an order for the payment of a sum of money is made by a court, it may be enforced by execution in the same manner as if it were a judgment."). We disagree. This statute does not necessarily transform an order to pay into a money judgment. Furthermore, even if the Contempt Order was a money judgment, the permissive statutory language - "may" - does not appear to preclude the use of a contempt proceeding to compel payment.

-13-

Markarian, 114 F.3d 346, 349 (1st Cir. 1997); Combs v. Ryan's Coal Co., 785 F.2d 970, 980 (11th Cir. 1986)(although trial court may use the remedy of contempt to enforce an earlier judgment, when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt).

Civil Rule 69(a),[5] made applicable here by Rule 7069, governs the procedure that applies to the enforcement of a money judgment in federal court. Carnes v. Zamani, 488 F.3d 1057, 1059 (9th Cir. 2007). Under Civil Rule 69(a)(1), "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." In Shuffler, after property owners engaged in conduct in direct contravention of a stipulated judgment ordering them to pay $190,000 into escrow for the benefit of the foreclosing bank by a certain date and granting the bank the right to conduct a trustee sale if the owners had not timely made the payment, the foreclosing bank brought contempt proceedings against the property owners for failing to comply with the stipulated judgment. , 720 F.2d at 1147. In holding that a contempt proceeding was not the proper method for enforcing the judgment, the Ninth Circuit stated, "we do not interpret the exception to execution to permit a federal court to 'enforce a money judgment by contempt or

_____

[5] Civil Rule 69(a)(1) provides:

A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution - and in proceedings supplementary to and in aid of judgment or execution - must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

-14-

methods other than a writ of execution, except in cases where established principles so warrant.'" Shuffler, 720 F.2d at 1148 (citations omitted). Therefore, to the extent the order of contempt was intended to enforce payment of the $190,000 money judgment, it could not be sustained. Id.

Despite Civil Rule 69's mandate for the proper enforcement of money judgments, we are persuaded by the Seventh Circuit's holding in Cleveland Hair Clinic, Inc. v. Puig that a court's monetary sanction for a contemnor's misconduct is not an "ordinary" money judgment, and therefore the use of the contempt power is a proper method to enforce a sanction for misconduct. 106 F.3d 165, 166 (7th Cir. 1997)("Use of the contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment.")(citing Alpern v. Lieb, 11 F.3d 689, 690 (7th Cir. 1993)). See Loftus v. Se. Pa. Transp. Auth., 8 F.Supp.2d 464, 468 (E.D. Pa. 1998), aff'd, 187 F.3d 626 (3d Cir. 1999) (table case)(citing Cleveland Hair Clinic and holding that the use of the contempt power to enforce a sanction for misconduct is appropriate because a sanction for misconduct is not an ordinary money judgment); Eng. v. Goodcents Holdings, Inc., 2009 WL 2835201, at *2 (N.D. Ga. Aug. 31, 2009)(rejecting plaintiff's argument that a writ of execution was exclusive remedy for violating prior sanctions order and holding that contempt proceeding was proper remedy for plaintiff's failure to comply with the order awarding defendant attorney's fees for plaintiff's unreasonable continuation of litigation); SD Prot., Inc. v. Del Rio, 587 F.Supp.2d 429, 434-36 (E.D.N.Y. 2008)(holding party in contempt for failing to comply with prior order to pay monetary

-15-

sanction imposed for delaying litigation).

In Cleveland Hair Clinic, the district court imposed sanctions of approximately $100,000 against defendants' attorney after determining that he and his clients had engaged in sanctionable misconduct in connection with litigation. 106 F.3d at 166. When the attorney violated the sanctions order by refusing to pay, the court subsequently found him in contempt, adding a daily fine of $300 to the principal obligation until payment had been made. The attorney appealed the additional sanctions order. In affirming the district court, the Seventh Circuit held that the court's use of contempt power was an appropriate way to enforce the underlying sanctions for the attorney's misconduct because it is not an ordinary money judgment. Id.

In Loftus, the district court entered an order imposing sanctions of $4,000 in attorney's fees against the plaintiff's attorney for continuing to pursue what was clearly a frivolous lawsuit. 8 F.Supp.2d at 466. When plaintiff's attorney failed to comply with the sanctions order, defendants moved for civil contempt. As part of his defense, plaintiff's attorney argued that the court's sanctions order was a money judgment and should have been enforced by a writ of execution rather than through contempt proceedings. Citing Cleveland Hair Clinic, the district court rejected this proposition as "legally incorrect," and held that the contempt power to enforce a sanction for misconduct was appropriate because it is not an ordinary money judgment. Id. at 468. "The distinctions between sanctions and money judgments are warranted in light of public policy. While sanctions for

-16-

misconduct implicates [sic] the very integrity of the Court's processes, enforcement of a money judgment as between private parties is best left to the creditor-debtor mechanisms provided for in the Federal Rules of Civil Procedure."  Id.

Appellants' reliance on Shuffler, Markarian and Combs is misplaced.  The issue in those cases was not the defendant's failure to pay ordered sanctions for misconduct.  Based on the authority cited above, we conclude that the First Contempt Order awarding Debtors sanctions for Appellants' willful violation of the discharge injunction is distinguishable from an ordinary money judgment.  As such, it was not improper for the bankruptcy court to conduct a contempt proceeding and hold Appellants in contempt for their failure to pay the sanctions award imposed by the First Contempt Order.

### VI. CONCLUSION

The First Contempt Order was definite and specific, Appellants had knowledge of the order, and they disobeyed it by not paying the sanctions imposed within 60 days of entry of the order.  Accordingly, the bankruptcy court did not abuse its discretion in entering the Second Contempt Order holding them in contempt, compelling payment of the original sanctions award and awarding additional sanctions.  We AFFIRM.[6]

---

[6] Appellants in this appeal have not raised any issue over the appropriateness of the awarded sanctions in the Second Contempt Order.  As noted above, Appellants raised whether the bankruptcy court abused its discretion in allowing Debtors to enforce a previous contempt order through a subsequent contempt proceeding.  Given Appellants' failure to question the appropriateness of the sanctions awarded in the Second Contempt Order, the Panel renders no opinion on the sanctions award.

-17-