FILED

Mar 4 2014

NOT FOR PUBLICATION

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.  NC-13-1285-DJuKi |
| | ) | |
| KAVINDAR PAUL SINGH, | ) | Bk. No.  12-48240-RLE |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| RATTAN DEV SINGH DHALIWAL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| KAVINDAR PAUL SINGH, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on February 20, 2014
at San Francisco, California

Filed - March 4, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

_____

Appearances:    Michael J. Koepnick of Dhaliwal Law Group, Inc.
                argued for Appellant; Simram Kaur Singh argued for
                Appellee.

_____

Before: DUNN, JURY and KIRSCHER, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The appellant, Rattan Dev Singh Dhaliwal ("Dhaliwal"), former attorney for the debtor, Kavindar Paul Singh ("debtor"), appeals the bankruptcy court's order imposing sanctions against him under § 105(a).[2]  We AFFIRM, though on another ground.

**FACTS**

On May 14, 2012, the debtor retained Dhaliwal as his attorney for his chapter 13 bankruptcy case.  He paid Dhaliwal $2,416 as an initial retainer, which included $281 for the filing fee and $35 for a credit report.

The debtor authorized his parents, Tejindar and Rajinder Singh (collectively, "the debtor's parents"), to oversee his chapter 13 bankruptcy case while he worked on an out-of-town project.[3]  He instructed Dhaliwal to communicate with his parents regarding his chapter 13 bankruptcy case.

More than four months later, on October 6, 2012, Dhaliwal filed the petition, the plan, the documents relating to the credit counseling requirement and the statement of the debtor's

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Bankruptcy Local Rules of the United States Bankruptcy Court for the Northern District of California are referred to as "Local Bankruptcy Rule."

[3] Neither the debtor nor Dhaliwal provide to us a copy of a written authorization for the Singhs to oversee the debtor's chapter 13 bankruptcy case.  Based on the various declarations of the debtor, the Singhs and Dhaliwal, as well as the various pleadings in the record, we assume that the debtor gave his parents verbal authorization.

2

social security number. He filed the schedules, summary of schedules, the declaration concerning the schedules, the statement of financial affairs ("SOFA") and Form B22C two weeks later. Dhaliwal affixed the debtor's electronic signature to the plan, schedules, SOFA and Form B22C without the debtor's authorization. He also failed to obtain the debtor's original "wet" signature for these documents.

When Dhaliwal filed an amended SOFA, a first amended plan and a second amended plan, he again affixed the debtor's electronic signature to the documents without the debtor's authorization. He also failed to obtain the debtor's original "wet" signature for these documents.

Over the course of his representation of the debtor, Dhaliwal filed various amended schedules, two amended plans and two objections to proofs of claim.[4] He also filed a combined response to the chapter 13 trustee's objection to plan confirmation and her motion to dismiss.

Dhaliwal was not present at the § 341(a) meeting of creditors on November 8, 2012. Instead, Dhaliwal had special counsel appear on his behalf to represent the debtor at the § 341(a) meeting of creditors.

On October 22, 2012, Dhaliwal filed his disclosure of compensation ("fee disclosure"), listing a total of $6,300 in attorney's fees, all of which were stated as due and owing. He later filed an amended fee disclosure ("amended fee disclosure")

---

[4] The debtor's plan eventually was confirmed on May 23, 2013, after new counsel had been retained by the debtor.

3

listing a total of $7,500 in attorney's fees. $2,000 of this amount had been paid by the debtor, leaving $5,500 due and owing. (According to the amended SOFA, the debtor had paid Dhaliwal $2,000 in May 2012.)

The chapter 13 trustee filed a motion for a review of the amended fee disclosure under § 329(b) ("fee review motion"), contending that the attorney's fees requested by Dhaliwal were excessive, given the services provided and the local guidelines of the district.[5] Although a hearing was set for January 29, 2013, the chapter 13 trustee withdrew the fee review motion, presumably because, by then, the debtor substituted his current attorney, Simran Kaur Singh ("Singh"), for Dhaliwal.[6] Notably, Singh formerly worked as an associate attorney at Dhaliwal's law firm.

On February 19, 2013, the debtor filed a motion for Dhaliwal

---

[5] According to the chapter 13 trustee, the fee guidelines for the Oakland Division of the U.S. Bankruptcy Court, Northern District of California, allow for a maximum retainer of $2,000, with the remainder to be paid through the plan.

Moreover, the local forms for the Oakland Division include a document titled, "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys" ("Rights and Responsibilities Agreement"), which both the debtor and his attorney must sign. The Rights and Responsibilities Agreement provides that an attorney may receive maximum initial fees of $4,800 in non-business cases and $6,000 in business cases. It further provides for an additional flat fee of $1,500 for motions or adversary proceedings to strip liens or abstracts of judgment under § 506 and/or § 522. The additional fees require an ex parte application and an order signed off by the chapter 13 trustee.

[6] The debtor filed the substitution of attorney on January 11, 2013.

4

to disgorge $2,100 in attorney's fees already paid ("fee disgorgement motion"). He also sought denial of Dhaliwal's request for $7,500 in his amended fee disclosure. The debtor claimed that Dhaliwal's fees exceeded the reasonable value of his services because he 1) often failed to communicate with the debtor's parents regarding his chapter 13 bankruptcy case; 2) failed to file certain bankruptcy documents timely; 3) filed unnecessary objections to proofs of claim and infeasible plans; and 4) filed bankruptcy documents bearing the debtor's electronic signature without the debtor's review or consent. Dhaliwal did not oppose the fee disgorgement motion.

Following a hearing on the fee disgorgement motion, the bankruptcy court entered an order ("fee disgorgement order") on March 20, 2013, requiring Dhaliwal to disgorge $2,130.[7] The bankruptcy court also ordered that no further fees were to be paid to Dhaliwal in the debtor's chapter 13 bankruptcy case.

Dhaliwal did not comply with the fee disgorgement order but instead moved for reconsideration ("motion to reconsider"). He asserted that he did not receive notice of the fee disgorgement motion. He further claimed that he had filed all of the bankruptcy documents with the knowledge and permission of the debtor and his parents. He also contended that his fees were fully justified because the debtor's chapter 13 bankruptcy case had been a business case; the debtor's non-consumer debts were greater than his consumer debts.

---

[7] The debtor received an additional $30 in attorney's fees and costs to compensate for paying the filing fee for the amended schedules.

Dhaliwal alleged that Singh was a disgruntled former employee who may have had "something to do with the fact that he [did not] have wet signature papers in [the debtor's chapter 13 bankruptcy case] file." However, he noted that, when she had worked as an associate in his law firm, Singh had "insisted on wet signatures" and had "watch[ed] like [a] hawk[] that everything was done by the book in every case."

Dhaliwal then claimed that he gave the debtor and his parents "everything that was relevant to [the debtor's chapter 13 bankruptcy] case . . ." and that perhaps "by mistake . . . gave them the wet signature papers as well . . . ." But he also theorized that "it [was] entirely possible, that the papers never got signed because at [that] time, [the debtor's parents] and [he] were treating each other like friends."

The debtor opposed the motion to reconsider, contending that Dhaliwal failed to cite any legal authority in support. He pointed out that Dhaliwal even admitted to failing to obtain the debtor's original "wet" signatures. The debtor further argued that Dhaliwal made numerous false and/or misleading factual allegations, including misstatements about Singh's involvement in the debtor's chapter 13 bankruptcy case when she was an associate at Dhaliwal's law firm.

The debtor also filed an ex parte motion for an order to show cause ("sanctions motion") why further sanctions should not be imposed against Dhaliwal for filing his bankruptcy documents with forged electronic signatures.

Specifically, the debtor argued that Dhaliwal violated Rule 9011(b)(1), (2) and (3) by filing bankruptcy documents that

6

were neither signed nor reviewed by the debtor. He pointed out that, under Rule 1008, all bankruptcy documents must be signed by the debtor, verifying under penalty of perjury that he reviewed the information contained therein and that they were true and correct to his best knowledge, information and belief. But here, the debtor had neither reviewed nor verified the information in his bankruptcy documents. Instead, Dhaliwal had forged the debtor's signature by affixing his electronic signature to various bankruptcy documents without his knowledge or consent and without obtaining his original "wet" signature. In forging the debtor's signature, Dhaliwal acted in bad faith and abused the bankruptcy process.

Alternatively, the debtor urged the bankruptcy court to impose further sanctions against Dhaliwal under § 105(a). He claimed that Dhaliwal had willfully and knowingly abused the bankruptcy process by forging the debtor's electronic signature.

The debtor requested that the bankruptcy court require Dhaliwal to produce all bankruptcy documents bearing the debtor's original wet signature pursuant to Local Bankruptcy Rule 5005-2(c). He also asked the bankruptcy court to revoke Dhaliwal's electronic case filing ("ECF") privileges.

In support of the sanctions motion, the debtor submitted the declaration of his father, Tejindar Singh. His father stated that he and the debtor met with Dhaliwal on May 14, 2012. He explained that, aside from the attorney-client agreement, the debtor did not sign any documents at that meeting.

The debtor submitted his own declaration as well. He echoed his father's statement that he did not sign any document, save

7

the attorney-client agreement. He also averred that Dhaliwal affixed his electronic signature to various bankruptcy documents without his review and consent and without obtaining his original "wet" signatures. He further stated that he did not authorize Dhaliwal or anyone else in Dhaliwal's office to affix his electronic signature to these bankruptcy documents. The debtor also stated that Dhaliwal never sent or showed copies of the bankruptcy documents to him.

He also submitted the declaration of his mother, Kavindar Singh. In her declaration, the debtor's mother stated that she and her husband, Tejindar, did not receive the petition, schedules and plan for the debtor until November 7, 2012, one day before the § 341(a) meeting of creditors.

The debtor also submitted the declaration of his current attorney, Singh. Singh stated that she never handled initial client consultations while she worked in Dhaliwal's office. She also rarely had any client contact. She had "no role in the bankruptcy cases until after the petitions and other initial case documents were filed and was in no way responsible for obtaining signatures for any of these documents." Singh did not see these initial documents "until after they were filed with electronic signatures and assumed that whoever filed them obtained the original signatures."

When she had worked at Dhaliwal's law office, Singh "never saw any documents bearing [the] Debtor's wet signature." She averred that the debtor's mother retrieved the debtor's chapter 13 bankruptcy case file from Dhaliwal's law office and gave it to her. Singh reviewed the debtor's chapter 13

8

bankruptcy case file and found no documents bearing the debtor's original "wet" signature.

Singh further stated that she left Dhaliwal's law office on October 12, 2012. She had no knowledge of the debtor's chapter 13 bankruptcy case aside from the fact that the debtor had retained Dhaliwal to represent him. She also knew that Dhaliwal did not file the debtor's chapter 13 bankruptcy petition until one week before she left Dhaliwal's law firm.

Dhaliwal opposed the sanctions motion, contending that "mere missing [original] 'wet signatures' should not be sanctioned in the absence of some showing of damage to the Debtor . . . ." He claimed that the debtor and his parents gave their informed consent to the filing of the bankruptcy documents.

Dhaliwal accused Singh of removing the bankruptcy documents bearing the debtor's original "wet" signatures from the debtor's chapter 13 bankruptcy case file. He also speculated that the debtor or his parents perhaps received the original signed documents when they retrieved the debtor's chapter 13 bankruptcy case file from his law office.

Dhaliwal submitted the declaration of his paralegal and office manager, Deborah Duarte ("Duarte"), in support. Duarte stated that it was "standard office policy for [her] to review all bankruptcy petitions with the clients and have them signed before they are filed with this court." She reported meeting with the debtor's parents on May 30, 2012; together, they worked on the petition, schedules, SOFA and other bankruptcy documents. After the meeting was over, Duarte gave the debtor's parents "copies of all documents to be signed by . . . the Debtor."

9

(Emphasis added.)  Notably, she did not state whether the debtor returned these bankruptcy documents to her with his original "wet" signatures.

Dhaliwal also submitted his own declaration.  He averred that the debtor had told the chapter 13 trustee at the § 341(a) meeting of creditors, under oath, that he had reviewed and signed the relevant bankruptcy documents.  Dhaliwal further alleged that Singh was using the debtor and his parents to discredit him.  He claimed that the sanctions motion "[had] left [him] shaken because of the personal attach [sic] on [his] ethics."  He averred that Singh was misleading the debtor and his parents with various lies.

Dhaliwal asserted that "every papers [sic] filed in his matter was personally given by [his] paralegal [Duarte] to [the debtor's parents]."  He also "saw for fact with [his] own eyes, both [the debtor's parents] sitting in the office of [his] paralegal [Duarte] and going over the details of the [debtor's chapter 13 bankruptcy] case."

At the May 22, 2013 hearing on the sanctions motion, the bankruptcy court asked counsel for Dhaliwal to produce the bankruptcy documents bearing the debtor's original "wet" signatures.  Counsel for Dhaliwal answered that Dhaliwal could not find them.  The bankruptcy court then called a brief recess to allow counsel for Dhaliwal to ask Dhaliwal if any one in his office actually saw the debtor and/or his father sign the bankruptcy documents.  When the bankruptcy court recalled the matter, counsel for Dhaliwal reported that both Dhaliwal and Duarte admitted that no one had seen the debtor and/or his father

10

sign the bankruptcy documents.

The bankruptcy court ultimately decided to levy sanctions against Dhaliwal for failing to obtain or retain the debtor's original "wet" signatures pursuant to § 105, Local Bankruptcy Rule 1008, Local Bankruptcy Rule 5005-2(c) and the bankruptcy court's Electronic Filing Procedures. However, it denied the request for sanctions under Rule 9011 because Dhaliwal "was not doing anything to perpetrate a fraud upon the Court or the client necessarily." Tr. of May 22, 2013 hr'g, 16:24-25, 17:2-3. The bankruptcy court believed that "it was just poor judgment or a lapse of judgment on Mr. Dhaliwal's part." Tr. of May 22, 2013 hr'g, 17:4-5.

The bankruptcy court suspended Dhaliwal's ECF privileges, effective immediately, until he took the ECF training course. However, the bankruptcy court allowed him to continue to file in paper form for his current and new clients.

It ordered sanctions against Dhaliwal in the amount of $10,000, with $8,000 of that amount stayed so long as he paid $2,000 within 30 days of entry of the order on the sanctions motion ("sanctions order") and completed the ECF training course within 90 days.

The bankruptcy court further awarded the debtor the reasonable attorney's fees ("attorney's fees award") he incurred in bringing the sanctions motion. It instructed Singh to submit a declaration, with supporting documentation, outlining her fees by May 29, 2013 ("attorney's fees declaration"). The bankruptcy court gave Dhaliwal until June 5, 2013, to oppose the attorney's

fees award.[8]

Near the end of the hearing, counsel for Dhaliwal informed the bankruptcy court that Dhaliwal was withdrawing his motion to reconsider.  Because Dhaliwal had not yet complied with the fee disgorgement order, the bankruptcy court charged Dhaliwal to disgorge $2,130.

The bankruptcy court entered the sanctions order on May 28, 2013.[9]  Dhaliwal timely appealed the sanctions order.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Did the bankruptcy court abuse its discretion in imposing sanctions against Dhaliwal?

**STANDARDS OF REVIEW**

We review a bankruptcy court's award of sanctions for an abuse of discretion.  Price v. Lehtinen (In re Lehtinen),

---

[8] Singh filed her attorney's fees declaration on May 29, 2013.  Dhaliwal did not file an opposition to the attorney's fee declaration.

[9] Dhaliwal fully complied with the sanctions order by: 1) paying $2,000 on June 10, 2013; 2) completing the ECF training course, as evidenced by the declaration he filed on June 6, 2013, and 3) paying $2,130 to the debtor's father, who apparently had paid the attorney's fees on the debtor's behalf.

564 F.3d 1052, 1058 (9th Cir. 2009). We also review its interpretation and application of a local rule for an abuse of discretion. Id. We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1252 & n.20. A bankruptcy court abuses its discretion if it applied the wrong legal standard or its factual findings were illogical, implausible or without support in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

Because the bankruptcy court has broad fact-finding powers with respect to sanctions, we accord great deference to its fact findings. Primus Auto. Fin. Serv., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997)(quoting Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1366 (9th Cir. 1990)(en banc)).

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

1) Motion to Strike

Before we begin our analysis, we must dispose of a procedural matter: the debtor's motion to strike portions of Dhaliwal's opening brief ("motion to strike").

In his motion to strike, the debtor claims that Dhaliwal

13

bases some of his arguments on statements made by the debtor at the § 341(a) meeting of creditors. He argues that Dhaliwal cannot reference such statements because the bankruptcy court did not have a chance to consider the transcript of the § 341(a) meeting of creditors. Dhaliwal never provided the bankruptcy court with a copy of the transcript of the § 341(a) meeting of creditors. He also could not testify as to what transpired at the § 341(a) meeting of creditors because he was not present, having had another attorney specially appear on his behalf to represent the debtor.

Dhaliwal opposes the motion to strike, contending that the statements were supported by the record. Specifically, he claims that he "simply reiterated statements he made on the record in a previously filed declaration." He points out that he included the declaration in the record before us.

We grant the debtor's motion to strike. "Papers not filed with the [bankruptcy] court or admitted into evidence by that court are not part of the clerk's record and cannot be part of the record on appeal." Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988). Here, we cannot consider the debtor's statements made at the § 341(a) meeting of creditors because no transcript of the § 341(a) meeting of creditors ever was filed with the bankruptcy court or submitted into evidence. Moreover, any of Dhaliwal's "reiterations" of the debtor's statements would be hearsay, as he was not present at the § 341(a) meeting of creditors.

14

2) <u>Sanctions under § 105(a)</u>[10]

On appeal, Dhaliwal contends that the bankruptcy court abused its discretion in imposing sanctions against him because the sanctions were too "severe," given that he merely made "an inadvertent technical infraction." He argues that, in order to impose sanctions against him under § 105(a), the bankruptcy court must find that he acted in bad faith or with an intent to perpetrate fraud on it.

Here, Dhaliwal contends, the bankruptcy court expressly determined that he merely had exercised poor judgment and simply committed a "technical violation" in filing bankruptcy documents without the debtor's original "wet" signatures. It further determined that the debtor had failed to show that he was harmed by Dhaliwal's "technical infraction."

Dhaliwal concedes that he may have violated the Bankruptcy Code and the local rules for electronic filing. <u>See</u> Appellant's Opening Brief at 20. But the bankruptcy court's sanctions were excessive and inequitable, given that the debtor was not harmed by Dhaliwal's "technical violation." In other words, Dhaliwal argues, the punishment did not fit the violation.

Bankruptcy courts generally have the authority to sanction attorneys under their civil contempt authority under § 105(a) and their inherent sanction authority. <u>Price v. Lehtinen</u>

---

[10] Dhaliwal refers to Rule 9011, even though the bankruptcy court did not impose sanctions under that Rule. Even Dhaliwal acknowledges that the bankruptcy court did not rely on Rule 9011. <u>See</u> Appellant's Opening Brief at 19. We therefore decline to address Dhaliwal's arguments with respect to Rule 9011.

15

(In re Lehtinen), 564 F.3d 1052, 1058 (9th Cir. 2009).

Section 105(a) provides:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The bankruptcy court's inherent sanction authority is recognized under § 105(a), Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 284 (9th Cir. 1996), but it differs from its civil contempt authority, Lehtinen, 564 F.3d at 1058. They are not interchangeable. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003).

Under civil contempt authority, the bankruptcy court may sanction violations of a specific order. Lehtinen, 564 F.3d at 1058 (again, quoting Dyer, 322 F.3d at 1196). To find a party in civil contempt, the bankruptcy court must find that the contemnor "violated a specific and definite order and that he had sufficient notice of its terms and that he would be sanctioned if he did not comply." Hansbrough v. Birdsell (In re Hercules Enters.), 387 F.3d 1024, 1028 (9th Cir. 2004). The movant bears the burden of demonstrating by clear and convincing evidence that the contemnor violated the specific and definite order of the court. Id. "A person fails to act as ordered by the court when he fails to take all reasonable steps within his power to insure compliance with the court's order." Rosales v. Wallace (In re Wallace), 490 B.R. 898, 904 (9th Cir. BAP 2013).

Under the inherent sanction authority, the bankruptcy court

16

may sanction "a 'broad range' of conduct." Lehtinen, 564 F.3d at 1058 (quoting In re Dyer, 322 F.3d at 1196). Sanctionable conduct includes improper litigation tactics (e.g., delaying or disrupting litigation), Lehtinen, 564 F.3d at 1058 (again, quoting In re Dyer, 322 F.3d at 1196), vexatious conduct, Hale v. U.S. Trustee, 509 F.3d 1139, 1148 (9th Cir. 2007), bad faith, wanton conduct, willful abuses of judicial process, acting in the litigation for an improper purpose or acting for oppressive reasons, Fink v. Gomez, 239 F.3d 989, 991-92 (9th Cir. 2001). See also Guerra v. Dumas (In re Avon Townhomes Venture), 2012 WL 1068770 (9th Cir. BAP 2012)("Sanctions are available 'for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose.' Therefore, even if a party does not act in bad faith but only recklessly, when the reckless conduct is coupled with an improper purpose, such as an attempt to influence or manipulate proceedings to gain an advantage, it is sanctionable under a court's inherent power.")(quoting and citing Fink, 239 F.3d at 994).

In order to impose sanctions under its inherent sanction authority, the bankruptcy court must find bad faith or willful misconduct. "[B]ad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." Lehtinen, 564 F.3d at 1058 (quoting Dyer, 322 F.3d at 1196). The bankruptcy court must specifically find bad faith or conduct tantamount to bad faith. Lehtinen, 564 F.3d at 1061.

Unfortunately, based on the record before us, we cannot affirm the bankruptcy court's imposition of sanctions against

17

Dhaliwal under § 105(a). Dhaliwal did not violate a specific and definite order that also warned him that he would be subject to sanctions if he did not comply. Dhaliwal also did not act in bad faith or engage in willful misconduct; the bankruptcy court concluded that he simply exercised poor judgment or experienced a lapse of judgment in filing the bankruptcy documents without the debtor's original "wet" signatures.

We nonetheless affirm the bankruptcy court's imposition of sanctions against Dhaliwal, see Shanks, 540 F.3d at 1086, because we conclude that it was enforcing its local rules as permitted under its inherent authority to manage attorney practices before it. Authority to impose sanctions in these circumstances is not "'governed by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Hale v. U.S. Trustee, 509 F.3d at 1148 (quoting Caldwell, 77 F.3d at 283). See also In re Nguyen, 447 B.R. 268, 281 (9th Cir. BAP 2011)(concluding that bankruptcy court did not abuse its discretion in imposing sanctions under its local rule, as the local rule implemented its inherent authority to manage the practice of bankruptcy law before it).

Local Bankruptcy Rule 5005-2(c) provides:

> The electronic filing of a document purportedly signed by someone other than the Registered Participant, including but not limited to the petition, statement of financial affairs, and schedules of assets and liabilities, shall be deemed a certification by the Registered Participant that he or she has the document in question, bearing the person's original signature, in his or her physical possession. The Registered Participant must produce the original signed document on request by the Court and the Registered Participant shall retain the document bearing the original

18

signature until five years after the case or adversary proceeding in which the document was filed is closed.

Local Bankruptcy Rule 9011-1 provides:

Any petition, schedule, statement, declaration, claim or other document filed and signed or subscribed under any method (digital, electronic, scanned) adopted under the rules of this Court shall be treated for all purposes (both civil and criminal, including penalties for perjury) in the same manner as though manually signed or subscribed.

Failure of counsel or of a party to comply with any provision of these rules or the Bankruptcy Rules shall be grounds for imposition by the Court of appropriate sanctions.

Here, Dhaliwal had filed bankruptcy documents through ECF. By filing them through ECF, Dhaliwal certified that he possessed the bankruptcy documents bearing the debtor's original "wet" signatures. However, when the bankruptcy court asked him to produce the original signed bankruptcy documents, he could not. Instead, Dhaliwal waffled, first stating (through counsel) that, as far as he knew, he did not have the original signed bankruptcy documents, then saying that he was not sure that he ever obtained the debtor's original "wet" signatures. Dhaliwal also admitted to the bankruptcy court that neither he nor any one else at his law firm had seen the debtor or his father sign the bankruptcy documents. At oral argument, counsel for Dhaliwal conceded that Dhaliwal violated the local rules in failing to obtain the debtor's original "wet" signatures. Clearly, as the bankruptcy court concluded, Dhaliwal did not possess the original signed bankruptcy documents, in violation of Local Bankruptcy Rule 5005-2(c).

Because Dhaliwal violated Local Bankruptcy Rule 5005-2(c),

19

the bankruptcy court could and did use its authority under Local Rule 9011-1 to impose sanctions against him.  We do not conclude on this record that the sanctions imposed by the bankruptcy court were excessive or disproportionate in light of the concerned violations.  The bankruptcy court therefore did not abuse its discretion in imposing sanctions, in terms of the form and the monetary amount of the sanctions, against Dhaliwal, particularly because he avoided the $10,000 monetary sanction by paying $2,000 by the deadline imposed by the bankruptcy court.

**CONCLUSION**

For the foregoing reasons, we AFFIRM.